UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RYAN DAVIS,

           Plaintiff,

      v.                                          Case No. 25-C-499

PATRICK MURPHY, KELLY PELKY,
ROBERT RHODES, LUDWIG,
J. GIESLER, LAURA TOURAY, and
KARL HENRIKSON,

           Defendants.

## SCREENING ORDER

Plaintiff Ryan Davis, who is currently serving a state prison sentence at Oshkosh Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Davis' motion for leave to proceed without prepaying the full filing fee, his motion to appoint counsel, his motion to appoint a medical expert and examiner, and to screen the complaint.

**MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE**

Davis has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Davis has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $46.70. Davis' motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Davis, on October 17, 2023, he injured his right ankle. An x-ray was taken two days later, on October 19, 2023, and Defendant Dr. Patrick Murphy diagnosed the injury as an ankle sprain. Davis asserts that the pain persisted and that he complained for nearly a year from November 2, 2023, until September 4, 2024, that he was in pain and that the medication he had been prescribed was not effective. In April 2024, Defendant Robert Rhodes, a physical therapist, began to see Davis to strengthen and increase the mobility in his ankle. Davis asserts that the exercises always caused his ankle to hurt more, but Rhodes told Davis he had to continue physical therapy or he would tell Dr. Murphy not to see him anymore. Davis states that no one ordered an MRI even though his ankle pain was getting worse. Dkt. No. 1 at 2-3; 7.

At some unspecified time, someone ordered an MRI (presumably Dr. Murphy, but Davis does not say). On September 4, 2024, Davis went to Ascension Mercy hospital to have an MRI. The next day, Dr. Murphy informed Davis that the results showed "an ununited lateral Talar process fracture with extensive degenerative changes in the subtalar joint." Davis asserts that Dr. Murphy delayed properly diagnosing his injury and failed to adequately address his complaints of pain. *Id.* at 2-3.

A little more than a month after the MRI, on October 17, 2024, Davis went to OSMS Foot & Ankle Clinic where he was evaluated by Dr. Henrikson who, according to Davis, "quickly diagnosed a need for surgery within 6 weeks or less, & ordered [Davis] to wear a CAM boot until surgery, & no weight bearing." Following this appointment, Davis asserts that there was no more physical therapy. It appears that someone (again, presumably Dr. Murphy) ordered that Davis be

allowed to use crutches and a wheelchair consistent with Dr. Henrikson's recommendation that Davis avoid bearing weight on the ankle. Davis states that he persistently followed up with Dr. Murphy and others about Dr. Henrikson's recommendation for surgery. Davis asserts that he also complained on December 17, 2024, that the meloxicam that had been prescribed for his pain was ineffective. According to Davis, sometime in December 2024 or January 2025, Dr. Murphy measured his calf and noted that Davis had lost three inches of muscle/tissue due to non-use. Davis states that he has been in a wheelchair for nearly six months and has had to endure underarm burns from using the crutches. *Id.* at 4-6.

Davis asserts that during December 2024 and January 2025, he sent six information requests to Kelly Pelky, the acting Health Services Unit Manager, complaining that he was not being adequately treated, but the requests "were basically ignored," and Pelky refused to intervene. He states that on one occasion, she responded, "B/C your injury Is not life threatening. Only those cases added to the top of the off-site/surgical list." Davis asserts that, by that point, it had been more than a year since he injured his ankle (but only a few months since Dr. Henrikson had recommended surgery). He also asserts that Pelky "breached her duty & did not follow-up with Defendant Henrikson to inquire as to why he had not completed the DOC-3001 (Reclassification Recommendation)." *Id.* at 6.

Davis next asserts that Defendant Ludwig, who is the Assistant Director of Nursing, was consulted during the inmate complaint examiner's investigation. Davis notes that Ludwig confirmed that surgery was recommended but noted that no timeframe was defined within the recommendation. Davis asserts that neither Ludwig nor Pelky called Dr. Henrikson to inquire about a possible timeframe. Davis also states that J. Geisler and Laura Touray, who schedule offsite appointments, failed to follow up with Dr. Henrikson to find out why he had not completed

4

the proper paperwork or defined a timeframe within which the surgery should be performed. Finally, Davis asserts that Gillingham, the institution complaint examiner (who Davis does not identify as a defendant in the caption of his complaint but who Davis refers to as a defendant in the body of his complaint), "is engaged in a practice, policy & custom of denying, rejecting & dismissing the inmate complaints that involve staff misconduct." *Id.* at 9.

### THE COURT'S ANALYSIS

Davis believes that the defendants have shown deliberate indifference to his ankle injury because he has not yet received surgery to address the injury and because he has not received adequate pain relief while he waits for surgery. To state a claim under the Eighth Amendment, a plaintiff must allege that prison officials intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)). Further, a "delay in treatment may show deliberate indifference if it exacerbated [the plaintiff's] injury or unnecessarily prolonged his pain." *Perez*, 792 F.3d at 777-78.

It appears from Davis' allegations that Dr. Murphy ordered an x-ray, diagnosed a sprain, referred Davis to physical therapy, ordered an MRI when physical therapy was unsuccessful, referred Davis to a specialist based on the results of the MRI, and then allowed Davis to use a wheelchair and crutches while he waited for surgery. This progression of care over the course of about a year does not seem to support Davis' conclusion that Dr. Murphy was deliberately

5

indifferent to his injury.  But, at this early stage, the Court must construe all of Davis' allegations broadly, so the Court will allow him to proceed on a deliberate indifference claim based on allegations that Dr. Murphy delayed diagnosing and treating Davis' injury and failed to provide adequate medication to address Davis' complaints of pain.

The Court will also allow Davis to proceed on a deliberate indifference claim against Pelky, the health services manager, who allegedly ignored Davis' complaints that he was being ignored by his providers.  Further development of the record may reveal that Pelky appropriately deferred to his providers' treatment decisions, *see, e.g.*, *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010), but at this stage, Davis' allegations are sufficient to state a claim.  And, finally, Davis states a deliberate indifference claim against Rhodes, the physical therapist, based on allegations that he forced Davis to continue with physical therapy even though the exercises caused excruciating pain and that, even in the face of Davis' complaints about the pain, he threatened to stop all treatment if Davis did not continue with the exercises.

Davis does not, however, state a claim against Dr. Henrikson.  According to Davis, Dr. Henrikson diagnosed his injury and recommended surgery.  As an offsite specialist, Dr. Henrikson is not responsible for approving prisoners' surgeries or scheduling their surgeries.  *See Knight v. Wiseman*, 590 F.3d 458, 462 (7th Cir. 2009) (holding that to be liable under §1983 a defendant must have been personally responsible for the deprivation of a constitutional right).  While not entirely clear, it appears that Davis believes Dr. Henrikson should have completed paperwork that would have allowed Davis to move to the top of the surgery list.  But Davis is not entitled to demand that prison officials immediately follow Dr. Henrikson's recommendation at the expense of other prisoners waiting for care.  *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [the plaintiff] is not entitled to demand specific care.  She is not entitled

to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). And even assuming Dr. Henrikson did desire for Davis' surgery to be prioritized, his failure to complete the proper form is at most a matter of negligence, which is not actionable under the Constitution. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976) ("An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain.").

Nor does Davis state a claim against Geisler and Tourney who were responsible for scheduling the surgery consistent with Dr. Henrikson's recommendation. Their function was purely administrative, and nothing suggests that they did not perform their duties as assigned. Davis asserts that they should have called Dr. Henrikson to confirm his recommendation or to obtain additional paperwork that would have allowed them to prioritize his placement on the surgery list, but "there is no general duty of rescue" under §1983. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). "A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to supply a gratuitous rescue service." *Id*.

Finally, Davis fails to state a claim against Gillingham, the institution complaint examiner, and Ludwig, the director of nursing, based on allegations that they did not rule in his favor on his inmate complaint. According to Davis, Gillingham investigated his claim by asking Ludwig to review the relevant medical records; Ludwig reviewed the records and confirmed that Davis was receiving treatment and had been placed on the surgery list consistent with Dr. Henrikson's recommendation. Their investigation of Davis' inmate complaint does not support an inference that they were deliberately indifferent to his condition and the mere fact that his inmate complaint was dismissed does not entitle him to relief. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir.

2007) ("Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). Further, Davis' legal conclusion that Gillingham engages in a practice, policy, and custom of recommending dismissal of inmate complaints about staff misconduct is unsupported by factual allegations and therefore is insufficient to state a claim. *Ashcroft*, 556 U.S. at 678.

### MOTIONS TO APPOINT COUNSEL AND AN EXPERT/INVESTIGATOR

Davis filed motions to appoint counsel and to appoint a medical expert and/or investigator on the basis that he is indigent, the issues in this case are complex, and he has very limited legal and medical knowledge. In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)). Accordingly, in exercising its discretion, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)).

It appears that Davis has satisfied the first prong of the standard. Nevertheless, the Court will deny his motion because he appears capable of representing himself during the early stages of this case. When considering whether a plaintiff has the capacity to represent himself, the Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience,

intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Pennewell v. Parish*, 923 F.3d 486, 491 (7th Cir. 2019).

Nothing in Davis' complaint or motions suggests that he is unable to participate in discovery and respond to a summary judgment motion. Davis' claims that the defendants delayed his surgery and denied him adequate pain medication are straightforward and will largely turn on his personal knowledge of how he was injured and how his requests for treatment were handled. Davis' filings have been detailed and organized, suggesting that he understands his claim and has the capacity to request relevant information in discovery and identify and present the material facts of his case at summary judgment.

To the extent Davis is uncertain about how his case will proceed, he is encouraged to review the guide the Court will send along with this decision. This guide includes information, including a glossary of legal terms, that Davis may find helpful. Once the defendants are served with Davis' complaint, they will have sixty days to respond to the complaint. Once they respond, the Court will enter a scheduling order setting dates for the completion of discovery and the filing of dispositive motions. In the meantime, Davis is encouraged to be patient.

The Court will therefore deny Davis' motion to appoint counsel. If new challenges arise that Davis does not believe he can overcome, he may renew his motion. If he does so, he should describe in detail what challenges he is facing and what efforts he has made to overcome them.

The Court will also deny his motion to appoint a medical expert and/or investigator. The Seventh Circuit has explained that, under Fed. R. Evid. 706, "[a] court may appoint an expert to help sort through conflicting evidence, but it need not appoint an expert for a party's own benefit or to explain symptoms that can be understood by a layperson." *Turner v. Cox*, 569 F. App'x 463,

9

468 (7th Cir. 2014) (internal citations omitted). Under this standard, the Court finds no basis to grant Davis' motion. To begin, his motion is premature. As noted, this rule is in place to assist a court in sorting through conflicting evidence, but currently there is no conflicting evidence—the defendants have not even had a chance to respond to Davis' complaint.

Further, and more importantly, it is clear from the motion that Davis wants an expert for *his* benefit, not *the Court's* benefit. But Rule 706 is not a vehicle for indigent parties to hire an expert favorable to their position at the opposing party's expense. Also, as noted above, Davis' claims are not complicated. He asserts that the defendants ignored his complaints of persistent ankle pain and refused to provide adequate treatment. Ankle pain following an injury is a common symptom that a layperson can understand without the assistance of an expert, particularly because there appears to be no dispute about the nature of the injury or how it should be treated—the only dispute appears to be the timing of the treatment. The Court resolves claims like Davis' claims often, nearly always without the help of an expert. Accordingly, the Court will deny Davis' motion to appoint an expert.

**IT IS THEREFORE ORDERED** that Davis' motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Davis' motion to appoint counsel (Dkt. No. 4) is **DENIED** without prejudice and his motion to appoint a medical expert and investigator (Dkt. No. 6) is **DENIED**.

**IT IS FURTHER ORDERED** that Davis fails to state a claim against Ludwig, J. Giesler, Laura Touray, and Dr. Karl Henrikson, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Davis' complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Dr. Patrick Murphy, Kelly Pelky, and Robert Rhodes.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Dr. Patrick Murphy, Kelly Pelky, and Robert Rhodes shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of Davis shall collect from his institution trust account the $303.30 balance of the filing fee by collecting monthly payments from Davis' prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Davis is transferred to another institution, the transferring institution shall forward a copy of this Order along with Davis' remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Davis is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all

inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Davis is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Davis may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin this 1st day of May, 2025.

_____
William C. Griesbach
United States District Judge